NATHAN D. RIVERA, ISB # 8339
Attorney at Law
Rivera Law
53 S. Shilling
PO Box 700
Blackfoot, ID  83221
Telephone: (208) 785-5618
Facsimile: (208) 785-4858
general@riveralawyers.com

Attorney for Defendant

UNTIED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 4:23-cr-00193-BLW |
| vs. | ) MOTION TO DISMISS THE INDICTMENT |
| RYAN R. VAN DYKE, | ) |
| Defendant. | ) |

COMES NOW Defendant, by and through Counsel, NATHAN D. RIVERA, and hereby moves to dismiss the indictment on the following grounds and for the following reasons.

## FACTS

On or about July 25th, 2023, the Defendant was charged by way of indictment for Possession of a Firearm by a Prohibited Person pursuant to 18 U.S.C. §922 (g)(8) and 924 (a)(8). It is alleged that the defendant knowingly possessed a Smith & Wesson, .38 Special, Serial Number BPY3776, which was transported in interstate and foreign commerce, while subject to a civil domestic violence protection order.

## LAW AND ARGUMENT

**I. Federal statutes prohibiting possession of firearms by someone subject to domestic violence restraining order violates the Second Amendment.**

The second Amendment of the United States provides that "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Supreme Court held in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." U.S., 142 S. Ct. 2129-30, 213 L.Ed.2d 387 (2022). In that context, the Government bears the burden of "justify[ing] its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

In answering that question the 5th Circuit stated that the United States Supreme Court determined that "The people" in the Second Amendment has been interpreted throughout the Constitution to "unambiguously refer to all members of the political community, not an unspecified subset." United States v. Rahimi, 61 F.4th 443, 451 (5th Cir.), cert. granted, 143 S. Ct. 2688 (2023). Further, "the people" "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* (citing *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990)).

When referring to a person who is subject to a domestic violence restraining order, the 5th circuit opined;

> "A Defendant, who was subject to domestic violence restraining order, nevertheless is included in "the people," within meaning of Second Amendment's protection against infringement of the right of the people to keep and bear arms, and thus, defendant was within Second Amendment's scope, for purposes of determining whether federal statute prohibiting possession of firearms by someone subject to domestic violence restraining order violated

Second Amendment; defendant, while hardly a model citizen, was nonetheless part of the political community entitled to the Second Amendment's guarantees, all other things equal. U.S. Const. Amend. 2; 18 U.S.C.A. § 922(g)(8). *Id.*

Therefore, a Federal Statute prohibiting possession of firearms by someone subject to domestic violence restraining order, entered after a civil proceeding in which a court found a credible threat to another person, violates the Second Amendment, as being inconsistent with the historical tradition that delimits the outer bounds of the right to keep and bear arms. U.S. Const. Amend. 2; 18 U.S.C.A. § 922(g)(8). *Id* at, 61 F.4th 443, 455 (5th Cir.). To sustain § 922(g)(8)'s burden on Mr. Van Dyke's Second Amendment right, as the government tried to do to Rahimi, the Government bears the burden of proffering "relevantly similar" historical regulations that imposed "a comparable burden on the right of armed self-defense" that were also "comparably justified." *Id*, 61 F.4th 443, 455 (5th Cir.).

In *Rahimi*, the government attempted to do just that, but their examples fell short and in vacating *Rahimi's* conviction, the 5th Circuit reasoned:

> Doubtless, 18 U.S.C. § 922(g)(8) embodies salutary policy goals meant to protect vulnerable people in our society. Weighing those policy goals' merits through the sort of means-end scrutiny our prior precedent indulged, we previously concluded that the societal benefits of § 922(g)(8) outweighed its burden on Rahimi's Second Amendment rights. But *Bruen* forecloses any such analysis in favor of a historical analogical inquiry into the scope of the allowable burden on the Second Amendment right. Through that lens, we conclude that § 922(g)(8)'s ban on possession of firearms is an "outlier[ ] that our ancestors would never have accepted." *Id.* Therefore, the statute is unconstitutional, and Rahimi's conviction under that statute must be vacated. *Id* at 61 F.4th 443, 461 (5th Cir.).

Here, just as in *Rahimi,* Mr. Van Dyke is being charged under 18 U.S.C. §922(g)(8) for being in possession of a firearm while being subject to a domestic violence civil protection order. However here, unlike Rahimi, Mr. Van Dyke is nowhere near the violent criminal Rahimi was.

"Between December 2020 and January 2021, Rahimi was involved in five shootings in and around Arlington, Texas. On December 1, after selling narcotics to an individual, he fired multiple shots into that individual's residence. The following day, Rahimi was involved in a car accident. He exited his vehicle, shot at the other driver, and fled the scene. He returned to the scene in a different vehicle and shot at the other driver's car. On December 22, Rahimi shot at a constable's vehicle. On January 7, Rahimi fired multiple shots in the air after his friend's credit card was declined at a Whataburger restaurant." *Id at* 61 F.4th 443, 448–49 (5th Cir.).

Mr. Van Dyke had a gun in his bag when he entered the courthouse in Bingham County Idaho. He did not attempt to conceal it. He placed his bag on the conveyor belt and his bag went through the x-ray machine. Deputies did not stop Mr. Van Dyke as noted in the police report where the officer states, "at 1345 hours Ryan VanDyke entered the Bingham County Court House located at 501 North Maple Blackfoot, Bingham County, Idaho. After VanDyke went through the security a short time later Deputy Nevarez identified a handgun in VanDyke's bag through the x-ray scanning machine. VanDyke had already retrieved his bag and went upstairs to the courtrooms before the firearm was located." (Van Dyke 006).

Mr. Van Dyke did not pull the gun out of his bag, and he did not threaten anyone. *Id.* When he was detained, he was sitting quietly in the courtroom checking his glucose levels on his cell phone. *Id.* Moreover, there is ongoing litigation at the state level regarding the protection order and its validity as Mr. Van Dyke contends the accuser admitted to purgering herself on the stand when pressed about the basis for the protection order. Furthermore, Mr. Van Dyke has no other convictions or other means whereby his right to bear arms may be restricted or prohibited.

Regardless, and although not binding upon this court, the 5th Circuits holding in *Rahimi* is on point, soundly reasoned, and persuasive. Therefore, the holding in *Rahimi* should be adopted by this court as there is no precedent in the 9th circuit to contradict. Furthermore, the Supreme Courts holdings in *Heller*[1] and *Bruen*[2] solidify and uphold the *Rahimi* court's position.

## COINCLUSION

Based on the foregoing, the Defendant respectfully requests that the indictment against him be dismissed, and he be released from custody as soon as possible.

DATED this 10th day of October 2023.

NATHAN D. RIVERA, ESQ.
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 10th of October 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jack Haycock
AUSA
Jack.Haycock@usdoj.gov

/s/ Nathan D. Rivera
NATHAN D. RIVERA
Attorney for Defendant

---

[1] "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." D.C. v. Heller, 554 U.S. 570, 634–35, 128 S. Ct. 2783, 2821, 171 L. Ed. 2d 637 (2008)

[2] "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2126, 213 L. Ed. 2d 387 (2022)